# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN RAYMOND GARCIA,<br><br>  Petitioner,<br><br>  v.<br><br>KIM HOLLAND, Warden,<br><br>  Respondent. | Case No.: 1:13-cv-01049-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS RE: RESPONDENT'S MOTION TO DISMISS (Doc. 19)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN 21 DAYS<br><br>ORDER DENYING MOTION TO TRANSFER CASE TO STATE COURT (Doc. 17) |

Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

The instant petition was filed on June 17, 2013 in the United States District Court for the Central District of California. (Doc. 1). The case was transferred to this Court on July 8, 2013. (Doc. 6). The petition challenges only Petitioner's 2010 validation as a member of the Mexican Mafia prison gang and Petitioner's resulting incarceration in the Secure Housing Unit ("SHU"). On July 23, 2013, Petitioner filed a motion to transfer the case to state court. (Doc. 17). On July 24, 2013, the Court ordered Respondent to file a response within sixty days. (Doc. 11). On September 23, 2013, Respondent filed the instant motion to dismiss the petition for lack of habeas corpus jurisdiction. (Doc. 19). Petitioner filed his opposition on October 15, 2013. (Doc. 20).

///

# DISCUSSION

A.  Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or for violating the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

Respondent's motion to dismiss argues there is a lack of habeas jurisdiction. Because it is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

B.  Failure To State A Cognizable Habeas Claim.

Respondent contends that the bases for the petition's claims, i.e., gang validation and SHU placement, do not implicate the fact of Petitioner's confinement nor its length, and, since they only implicate conditions of confinement, they are not properly subject to federal habeas corpus jurisdiction. (Doc. 19, pp. 1-3).  Respondent reasons that Petitioner is serving an indeterminate life term and, therefore, Petitioner's release is controlled by the Board of Prison Terms ("BPT"), not Respondent.  Petitioner responds that his gang validation and SHU placement will be considered determinative factors by the Board of Parole Hearings ("BPH") to find him unsuitable for parole in coming years, since "a validated prison gang associate is considered to be a threat to the security and safety of the institution."  (Doc.20, p. 2).

A federal court may only grant a petition for writ of habeas corpus if the petitioner can show that "he is in custody in violation of the Constitution . . . ." 28 U.S.C. § 2254(a).  A habeas corpus petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement.

1  Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485, 93
2  S. Ct. 1827 (1973); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is
3  absent, and a § 1983 action proper, where a successful challenge to a prison condition will not
4  necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules
5  Governing Section 2254 Cases.   Indeed, claims challenging the validity of a prisoner's continued
6  incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and
7  are cognizable only in federal habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 499 n.14
8  (1973).  In contrast, an action pursuant to 42 U.S.C. § 1983, is appropriate for a state prisoner
9  challenging the conditions of prison life but not the fact or length of the custody.  McCarthy v.
10 Bronson, 500 U.S. 136, 141-42 (1991); Preiser, at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir.
11 1991).

12  The Supreme Court has held that challenges to prison discipline which resulted in a loss of
13 credits must be raised in a federal habeas corpus action rather than in a § 1983 action because such a
14 challenge is to the very fact or duration of physical imprisonment, and the relief sought is a
15 determination of entitlement to speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500.  Likewise, a
16 constitutional challenge to the procedures used by prison officials during an inmate disciplinary
17 hearing, which resulted in a loss of credits, is cognizable pursuant to 28 U.S.C. § 2254. See, e.g.,
18 Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim
19 concerning loss of time credits resulting from disciplinary procedures and findings).

20  Nevertheless, the Court continues to recognize a "core" of habeas corpus jurisdiction where
21 success would inevitably affect the legality or duration of confinement. For example, in Wilkinson, the
22 Court noted that if success on a claim would mean at most a new opportunity for review of parole
23 eligibility, or a new parole hearing at which authorities could discretionarily decline to shorten a prison
24 term, then success would not inevitably lead to release, and the suit would not lie at the core of habeas
25 corpus. Wilkinson v. Dodson, 544 U.S. 74, 82 (2005)

26  In the context of actions which impact parole determinations, cases in this circuit have
27 recognized a possibility of habeas jurisdiction in suits that do not fall within the core of habeas corpus.
28 Bostic v. Carlson, 884 F.3d 1267 (9th Cir. 1989) (expungement of disciplinary finding likely to

3

accelerate eligibility for parole)[1]; Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the duration of confinement). However, relief pursuant to § 1983 remains an appropriate remedy for claims concerning administrative decisions made in prison where success would not necessarily imply the validity of continuing confinement. Docken v. Chase, 393 F.3d at 1030 (characterizing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (holding that a § 1983 suit is an appropriate remedy for challenges to conditions [there, administrative placement in a sex offender program affecting eligibility for parole] which do not necessarily imply the invalidity of continuing confinement).

Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then habeas jurisdiction is lacking. In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner sought relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. It was held that § 1983 was the appropriate remedy because the alleged constitutional errors did not affect the overall length of the prisoner's confinement; success in the § 1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit did not intrude upon the core or "heart" of habeas jurisdiction. Ramirez, 334 F.3d at 852, 858.

The court in Ramirez went further and considered the related question of the extent of habeas corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment." 334 F.3d at 858. The court reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful

---

[1] The Court notes that Bostic involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

> § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
>
> Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858-59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the overall length of a prisoner's confinement. Docken v. Chase, 393 F.3d at 1030-31. However, the appellate court has emphasized that measurement of the likelihood will result in an absence of habeas jurisdiction where the challenge will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez, expungement of the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Thus, the suit did not threaten to advance the parole date. Id. at 859.

Here, Petitioner does not cite, and the Court is unaware of, any legal authority holding that Petitioner has a federal constitutional right to an accurate gang "validation." Thus, any liberty interest in a gang validation or SHU placement must arise under California law. A liberty interest arises under state law when an inmate is subjected to restrictions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995). The mere possibility of a denial of parole at some later, and as yet undetermined, time, where the consideration suitability for parole may be premised in part upon inaccurate information about an inmate's gang membership, does not, without more, amount to the denial of a liberty interest.

In Sandin, the U.S. Supreme Court concluded that a *possible* loss of credits due to a disciplinary conviction was insufficient to give rise to a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation a relevant consideration." Sandin, 515

U.S. at 487.  The Court went on to note that "[t]he decision to release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded procedural protection at this parole hearing in order to explain the circumstances behind his misconduct record."  Id. at 487.  The Court held that "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause."  Id.

After Sandin, in order to demonstrate a liberty interest, an inmate must show that a disciplinary conviction will inevitably lengthen the duration of the inmate's incarceration.  Id.  The Court finds no logical or practical basis upon which to distinguish the instant allegation, i.e., that an erroneous gang "validation" will impact Petitioner's future chances for parole, from the allegation in Sandin that an erroneous disciplinary finding detracted from the inmate's chances for parole.  Accordingly, the same result should obtain, i.e., that Petitioner does not have a liberty interest in an accurate gang validation.  Since Petitioner has failed to establish that such an erroneous validation will "inevitably lengthen the duration" of his incarceration, there is no due process interest at issue and thus no basis for this Court to assert its habeas jurisdiction.

Moreover, in addition to the gang validation, the BPH is required by California law to consider a wide range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects on the victims, as well as any parole plans he may have.  Cal. Code Regs. Tit. 15, § 2402(b)-(d).  In other words, any parole decision depends on "an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based on their experience with the difficult task of evaluating the advisability of parole release."  Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10, 99 S.Ct. 2100 (1979).

Here, the mere fact of Petitioner's gang validation, while unquestionably one of a myriad of factors that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of due process, Sandin, 515 U.S. at 487, and can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the

length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of a Petitioner's confinement. Docken, 393 F.3d at 1030-31.

Respondent also contends that, because Petitioner is serving an indeterminate life sentence, any credits he may be denied by virtue of his gang validation and SHU placement have no impact on his release date. The Court agrees.

As a state prisoner serving an indeterminate life sentence, Petitioner's credit-earning is governed by state regulations. Section 2290(a) of Title 15 provides as follows:

> "Life prisoners may earn post-conviction credit for each year spent in state prison. Post-conviction credit for time served prior to the hearing at which a parole date is established shall be considered at that parole consideration hearing. Thereafter, post-conviction credit for time served since the last hearing shall be considered at progressive hearings. In no case may post-conviction credit advance a release date earlier than the minimum eligible parole date."

Put simply, once Petitioner has reached his MEPD, his credit-earning potential as an inmate serving an indeterminate life sentence has no bearing at all on the length of time he will actually remain in prison, since, at that point, such a determination is made solely by the Board of Parole Hearings ("BPH") after conducting a suitability hearing.

Here, Petitioner alleges that he is serving an indeterminate term of 29 years-to-life (Doc. 1, p. 2), and that his MEPD is August 13, 2025. (Doc. 2, p. 5). Thus, although Petitioner's gang validation and SHU placement impacts his post-conviction credit-earning capacity, thereby preventing the advancement of his MEPD through credits, it is still the case that, even when Petitioner arrives at his MEPD and is given a parole suitability hearing, the possibility of release from incarceration will still be solely the decision of the BPH, based upon the members' exercise of their regulatory function under California law. Petitioner's credits, or lack thereof, play no role in whether or not the BPH decides that Petitioner is suitable for parole.

Petitioner has made no allegation, nor has he established, that granting the relief he requests in the instant petition would have any material impact on the overall length of his sentence, i.e., the date on which the BPH ultimately decides Petitioner is suitable for parole, if ever. Because of this, the Court concludes that <u>none</u> of Petitioner's complaints, if corrected, would <u>necessarily</u> shorten Petitioner's overall sentence. Ramirez, 334 F.3d at 859 (emphasis supplied). Thus, habeas jurisdiction is absent for and the petition should be dismissed.

Finally, even where habeas jurisdiction does exist, federal courts are nevertheless reticent to micro-manage a respondent's decisions regarding the day-to-day handling of prison discipline and inmate safety. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment....Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life...." Sandin v. Conner, 515 U.S. 472, 482 (1995).  In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), overruled in part on other grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the basis for this deference:

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration.  In part this policy is the product of various limitations on the scope of federal review of conditions in state penal institutions.  More fundamentally, this attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention.  Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication.  Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.  Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.  For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.  Judicial recognition of that fact reflects no more than a healthy sense of realism.

Procunier, 416 U.S. at 404-405.  Thus, even if Petitioner's claim of improper validation and consequent SHU placement were cognizable in these habeas proceedings, for the reasons set forth in Sandin and Procunier, this Court would nevertheless be hesitant to second-guess CDCR's administrative decisions to validate Petitioner and place him in SHU confinement.

Since Petitioner has failed to establish that the claims in the instant petition would, if resolved favorably to him, likely have an effect on the length of his sentence, they are not properly brought as federal habeas claims.  Accordingly, the Court lacks habeas jurisdiction and therefore the claims should be dismissed for lack of jurisdiction.

    C. Petitioner's Motion to Remove Case to State Court.

As mentioned, Petitioner filed a motion asking that the case be transferred to the Kern County Superior Court in order to take advantage of what Petitioner characterizes as a favorable decision by the California Supreme Court. (Doc. 17).  Alternatively, Petitioner asks that the case continue to proceed in this Court.

First, state courts have no jurisdiction over federal habeas petitions under 28 U.S.C. § 2254. Indeed, the point of seeking federal review of state court decisions is to ensure that inmates' federal constitutional rights are not violated by the state courts. It is therefore not surprising that there is no procedure for removing a habeas case from federal court to state court. Accordingly, the Court will deny Petitioner's motion.

**ORDER**

For the foregoing reasons, it is HEREBY ORDERED that Petitioner's motion to transfer the case to state court (Doc. 17), is **DENIED**.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss (Doc. 19), be **GRANTED** and the petition be **DISMISSED**.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one (21) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 21, 2013**           /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE